FILED
2014 May-29  PM 02:06
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **JERRY BARNES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 4:13-CV-619-VEH** |
| | ) | |
| **MIKE BOLTON, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

## MEMORANDUM OPINION AND ORDER

## I.    INTRODUCTION AND PROCEDURAL HISTORY

Plaintiff Jerry Barnes ("Mr. Barnes") initiated this civil rights case on April 4, 2013. (Doc. 1). On July 17, 2013, Mr. Barnes filed an amended complaint (Doc. 17). Pursuant to this court's order (Doc. 26), entered on January 13, 2014, Mr. Barnes filed a second amended complaint (Doc. 27) on February 3, 2014.

The second amended complaint asserts claims under 42 U.S.C. § 1983 (*id.* ¶ 1), arising out of a purported warrantless law enforcement incident which occurred at Mr. Barnes's residence on or about November 17, 2012 (Doc. 27 ¶ 11), against various officers assigned to work for the Etowah County Sheriff's Office Drug Task Force. (*Id.* ¶ 6). According to the second amended complaint, the five named defendants are:  Scott Lumpkin ("Mr. Scott Lumpkin"), Mike Bolton ("Mr. Bolton"),

Tim Waldrop ("Mr. Waldrop"), Cole Lumpkin ("Mr. Cole Lumpkin"), and Clark Thompson ("Mr. Thompson"). (Doc. 27 at 1; *id.* ¶¶ 6-10). Mr. Barnes has sued these five defendants in their personal capacities only.

Mr. Barnes's second amended complaint contains five counts. Count One is an illegal seizure claim against all defendants. (Doc. 27 ¶ 41). Count Two is an illegal seizure claim against an unknown defendant.[1] (*Id.* ¶ 42). Count Three is an illegal search claim against Mr. Waldrop, Mr. Cole Lumpkin, and Mr. Thompson. (*Id.* ¶ 43). Count Four is an excessive force claim against Mr. Waldrop and Mr. Thompson. (*Id.* ¶ 44). Count Five is a Second Amendment claim against Mr. Waldrop only. (*Id.* ¶ 45).

Pending before the court is Mr. Waldrop's Motion To Dismiss Plaintiff's Second Amended Complaint (Doc. 28) (the "Rule 12(b)(6) Motion"), filed on February 14, 2014. In his Rule 12(b)(6) Motion, Mr. Waldrop seeks a dismissal of the claims asserted against him on the basis of qualified immunity and a dismissal of all requests for injunctive and declaratory relief as unsustainable as a matter of law. (Doc. 28 at 1).

Mr. Waldrop filed his supporting brief (Doc. 29) on February 14, 2014. On February 20, 2014, Mr. Barnes opposed the Motion. (Doc. 31). Mr. Waldrop replied

---

[1] The Eleventh Circuit has observed that normally "fictitious-party pleading is not permitted in federal court." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010).

2

on February 27, 2014. (Doc. 36).

Also pending is a Motion for Judgment on the Pleadings (Doc. 34) (the "Rule 12(c) Motion") filed by Mr. Bolton, Mr. Scott Lumpkin, Mr. Cole Lumpkin, and Mr. Thompson on February 25, 2014. These defendants also filed a brief (Doc. 35) in support of their Rule 12(c) Motion on February 25, 2014. Under appendix III of the court's uniform initial order, the deadline for Mr. Barnes to oppose the Rule 12(c) Motion ran on March 11, 2014 (*see* Doc. 6 at 23 ("The opponent's responsive brief shall be filed no later than fourteen (14) calendar days thereafter.")). Despite the existence of this deadline, Mr. Barnes has not responded to the Rule 12(c) Motion.

Accordingly, the Rule 12(b)(6) and Rule 12(c) Motions are both now under submission. For the reasons explained below, these motions are **GRANTED IN PART** and **DENIED IN PART**.

## II.   APPLICABLE STANDARDS

### A.   Motion To Dismiss

A Rule 12(b)(6) motion attacks the legal sufficiency of the complaint. *See* Fed. R. Civ. P. 12(b)(6) ("[A] party may assert the following defenses by motion: (6) failure to state a claim upon which relief can be granted[.]"). The Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is

3

and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103, 2 L. Ed. 2d 80 (1957) (footnote omitted) (quoting Fed. R. Civ. P. 8(a)(2)), *abrogated by Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007); *see also* Fed. R. Civ. P. 8(a)(2) (setting forth general pleading requirements for a complaint to include providing "a short and plain statement of the claim showing that the pleader is entitled to relief").

While a plaintiff must provide the grounds of his entitlement to relief, Rule 8 does not mandate the inclusion of "detailed factual allegations" within a complaint. *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964 (quoting *Conley*, 355 U.S. at 47, 78 S. Ct. at 103). However, at the same time, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563, 127 S. Ct. at 1969.

"[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* "When there are well-pleaded factual allegations, a court

should assume their veracity and then determine <u>whether they plausibly give rise to</u> <u>an entitlement to relief.</u>" *Id.* (emphasis added). "Under *Twombly*'s construction of Rule 8 . . . [a plaintiff's] complaint [must] 'nudge[] [any] claims' . . . 'across the line from conceivable to plausible.' *Ibid.*" *Iqbal*, 556 U.S. at 680, 129 S. Ct. at 1950-51.

A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965).

**B.      Motion for Judgment on the Pleadings**

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). As the Eleventh Circuit has explained the Rule 12(c) standard:

> Judgment on the pleadings is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts. *See Bankers Ins. Co. v. Florida Residential Property and Cas. Joint Underwriting Ass'n*, 137 F.3d 1293, 1295 (11th Cir. 1998) (citing *Hebert Abstract Co. v. Touchstone Properties, Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990)); *see also* Rule 12(c), Fed. R. Civ. P. When we review a judgment on the

pleadings, therefore, we accept the facts in the complaint as true and we view them in the light most favorable to the nonmoving party. *See Ortega*, 85 F.3d at 1524 (citing *Swerdloff v. Miami Nat'l Bank*, 584 F.2d 54, 57 (5th Cir. 1978)). The complaint may not be dismissed "'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Slagle*, 102 F.3d at 497 (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S. Ct. 99, 101–02, 2 L. Ed. 2d 80 (1957) & citing *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 811, 113 S. Ct. 2891, 2916–17, 125 L. Ed. 2d 612 (1993)).

*Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998).

Further, "[w]hether the court examine[s] [a pleading] under Rule 12(b)(6) or Rule 12(c), <u>the question [remains] the same: whether the [complaint] stated a claim for relief</u>." *Sampson v. Washington Mut. Bank*, 453 F. App'x 863, 865 n.2 (11th Cir. 2011) (emphasis added) (quoting *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.,* 305 F.3d 1293, 1295 n.8 (11th Cir. 2002)); *Sampson*, 453 F. App'x at 865 n.2 (applying *Strategic Income* and concluding that court's error in granting a dismissal under Rule 12(c) instead of Rule 12(b)(6) was harmless).

## C.    Failure To Oppose

Mr. Barnes's failure to file any opposition to the Rule 12(c) Motion does not automatically mean that it is due to be granted. As explained by Judge Steele in *Branch Banking and Trust Co. v. Howard*, No. 12–0175–WS–N, 2013 WL 172903 (S.D. Ala. Jan. 16, 2013), when the plaintiffs there likewise decided not to respond

to a pending motion to dismiss:[2]

> As noted, Churchill and Howard elected not to be heard in response to BB & T's Amended Motion to Dismiss. Notwithstanding that omission, BB & T (as Rule 12(b)(6) movant) bears the initial burden of demonstrating that it is entitled to dismissal of the counterclaims. Churchill's and Howard's lack of response to the Rule 12(b)(6) Motion does not trigger the kneejerk granting of such Motion on an abandonment theory. *See Gailes v. Marengo County Sheriff's Dep't*, 2013 WL 81227, *5 (S.D. Ala. Jan. 4, 2013) ("the Court will not treat a claim as abandoned merely because the plaintiff has not defended it in opposition to a motion to dismiss"). Rather, it remains BB & T's burden as movant to establish its entitlement to relief under Rule 12(b)(6). In light of these circumstances, the Court scrutinizes BB & T's Motion to Dismiss in accordance with the following legal standard: "the Court will review the merits of the [movant]'s position and, if it is clearly incorrect or inadequate to satisfy the [movant]'s initial burden, will deny the motion despite the [nonmovant]'s failure to respond. If, however, the [movant]'s presentation is adequate to satisfy its initial burden, the Court will not deny the motion based on arguments the [nonmovant] could have made but by silence elected not to raise." *Id.*

*Branch Banking*, 2013 WL 172903, at *1 (footnotes omitted).

## D.   Qualified Immunity

Qualified immunity may be affirmatively claimed by an individual defendant who is being sued personally for actions that he or she took while acting under color of state law. *Harlow v. Fitzgerald*, 457 U.S. 800, 815, 102 S. Ct. 2727, 2736-37, 73

---

[2] As *Sampson* and *Strategic Income* illustrate, the same substantive legal standard applies whether a motion to dismiss is filed pursuant to Rule 12(b)(6) or a motion for judgment on the pleadings under Rule 12(c). Therefore, the consequences of not opposing a motion to dismiss is the same, whether the motion is brought under Rule 12(b)(6) or under Rule 12(c).

L. Ed. 2d 396 (1982) (describing qualified immunity defense available to public officials). Qualified immunity is a question of law to be decided by the court prior to trial. It is designed to allow officials who are entitled to qualified immunity to avoid the expense and disruption of going to trial, and is not merely a defense to liability. *Ansley v. Heinrich*, 925 F.2d 1339, 1345 (11th Cir. 1991).

The Supreme Court has referred to the qualified immunity analysis as the "objective-reasonableness" test. *See Harlow*, 457 U.S. at 818, 102 S. Ct. at 2738 ("Reliance on the objective reasonableness of an official's conduct, as measured by reference to clearly established law, should avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment.") (footnote omitted). Under this test, public officials performing discretionary functions which would objectively appear to be within the official's authority have qualified immunity if the challenged "conduct d[id] not violate clearly established statutory or constitutional rights of which a reasonable person would have known[,]" given the circumstances and information possessed by the official at the time of the conduct. *Id.*

The objective-reasonableness test is a two-part analysis. First, the defendant public official must prove that he was performing duties within the scope of his discretionary authority when the alleged violation occurred. *Hutton v. Strickland*, 919

F.2d 1531, 1537 (11th Cir. 1990). A government official may prove that he was acting within the scope of his authority by showing facts and circumstances that would indicate that his actions were part of his normal job duties and were taken in accordance with those duties. *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988); *see also Cronen v. Texas Dep't of Human Services*, 977 F.2d 934, 939 (5th Cir. 1992) ("An official acts within his discretionary authority when he performs non-ministerial acts within the boundaries of his official capacity.").

Once the defendant proves that he was acting within his discretionary authority,[3] the burden then shifts to the plaintiff to prove that the defendant did not act in good faith. *Hutton*, 919 F.2d at 1537. The plaintiff may meet this burden by establishing that "the defendant public official's actions 'violated clearly established constitutional law.'" *Id.* (citing *Rich v. Dollar*, 841 F.2d 1558, 1563–64 (11th Cir. 1988)). The second prong of the objective-reasonableness test has two sub-parts. *Hutton*, 919 F.2d at 1538. First, the court must find that the constitutional law in question was clearly established when the alleged violation occurred. *Id.* Second, the court must find that "there is a genuine issue of fact regarding the government official's engaging in conduct violative of the clearly established law." *Id.*

---

[3] In this instance, Mr. Barnes makes no allegation or argument that any of the defendants acted outside his respective sphere of discretionary authority.

9

"Clearly established" means that "[t]he contours of the [violated] right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039, 97 L. Ed. 2d 523 (1987). This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the preexisting law the unlawfulness must be apparent. *Id.* Under this standard, qualified immunity is available to protect "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 1096, 89 L. Ed. 2d 271 (1986).

To defeat a qualified immunity defense, the plaintiff bears the burden of showing that the "legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions or, . . . the law clearly proscribed the actions the defendant took." *Barts v. Joyner*, 865 F.2d 1187, 1190 (11th Cir. 1989), *cert. denied*, 493 U.S. 831 (1989) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 528, 105 S. Ct. 2806, 2816, 86 L. Ed. 2d 411 (1985)).

In determining whether the plaintiff meets this burden in the context of a motion to dismiss, the court is guided by the Eleventh Circuit's holding in *Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010), which clarifies that the heightened pleading rule no longer applies to civil rights cases in which a qualified immunity defense is

asserted:

> While *Swann*, *GJR*, and *Danley* reaffirm application of a heightened pleading standard for § 1983 cases involving defendants able to assert qualified immunity, <u>we agree with Randall that those cases were effectively overturned by the *Iqbal* court. Pleadings for § 1983 cases involving defendants who are able to assert qualified immunity as a defense shall now be held to comply with the standards described in *Iqbal*</u>. A district court considering a motion to dismiss shall begin by identifying conclusory allegations that are not entitled to an assumption of truth-legal conclusions must be supported by factual allegations. The district court should assume, on a case-by-case basis, that well pleaded factual allegations are true, and then determine whether they plausibly give rise to an entitlement to relief. . . .

> <u>After *Iqbal* it is clear that there is no "heightened pleading standard" as it relates to cases governed by Rule 8(a)(2), including civil rights complaints</u>. All that remains is the Rule 9 heightened pleading standard.

*Randall*, 610 F.3d at 709-10 (footnote omitted) (emphasis added).

## III.   ANALYSIS

### A.   Mr. Barnes's Allegations[4]

In his complaint, Mr. Barnes maintains that on November 17, 2012, Defendants came to his home located in Gadsden, Alabama, and pounded on the door at 6:30 a.m. Defendants arrived in unmarked vehicles and were not dressed in uniforms. Awakened by the pounding, Mr. Barnes answered the door and, because of the

---

[4]  The court adopts the summary provided by Mr. Waldrop (Doc. 29 at 5-8), as Mr. Barnes has no objection to it. (Doc. 31 at 2).

unusual hour, held a handgun at his side. Defendants did not announce their identities as law enforcement officers, but some or possibly all had "sheriff" printed on the <u>back</u> of their clothing.

Mr. Barnes was surprised to see Defendants surrounding his door with their guns drawn. Mr. Waldrop asked for "Stephen Blackburn" ("Mr. Blackburn"). Mr. Barnes told Mr. Waldrop that Mr. Blackburn had not lived at this address for several years.

Mr. Thompson then shouted "gun, gun, he's got a gun," in a panicky voice. One or more Defendants ordered Mr. Barnes to drop his gun and lie down on the ground. While Mr. Barnes was complying with their demands, Mr. Waldrop grabbed Mr. Barnes's left arm and began dragging him from his house. Mr. Thompson then took Mr. Barnes's right arm and assisted Mr. Waldrop with dragging Mr. Barnes from his home.

After Mr. Barnes had been dragged outside by Mr. Waldrop and Mr. Thompson, Mr. Scott Lumpkin and Mr. Bolton handcuffed him behind his back and placed him face down in the gravel driveway. While Mr. Barnes's face was in the gravel, one or more Defendants took away his firearm and disassembled it. Mr. Waldrop told Mr. Barnes that he was lucky they had not shot him and that Mr. Barnes had no right to answer the door holding a handgun. Mr. Thompson agreed with what

Mr. Waldrop told Mr. Barnes.

Mr. Waldrop searched Mr. Barnes. Afterwards, Mr. Waldrop, Mr. Cole Lumpkin, and Mr. Thompson searched Mr. Barnes's house while Mr. Scott Lumpkin and Mr. Bolton watched Mr. Barnes. Mr. Barnes did not give anyone permission to search his home. Defendants did not have a warrant to arrest Mr. Barnes or to search his house.

Mr. Waldrop then took Mr. Barnes into his home and told him that, before Defendants returned to his house, Mr. Barnes should "get right with Jesus, Buddha, or whoever the fuck" Mr. Barnes chooses to worship, because when they came back, it would not end in the same way. Defendants left Mr. Barnes's residence.

Mr. Barnes went outside and found his handgun. His firearm had been disassembled into several pieces that were lying on the ground. Mr. Barnes realized that the magazine for the handgun was missing.

After that, Mr. Barnes approached one of Defendants' vehicles, rested his hand on the open window sill of the car door, and asked where his magazine was. Mr. Waldrop walked up to the vehicle, slapped Mr. Barnes's hand and said, "I don't know anything about your goddamn magazine, and get your hand off my fucking truck." Mr. Barnes responded, "Really?" Mr. Waldrop replied, "Yeah, really, Motherfucker. If you don't want your ass whipped up and down this street you will get away from

my fucking truck."

Mr. Barnes has not ever found the magazine to his gun. Mr. Barnes is also missing a flashlight that was inside his house at the time of the search.

Defendants gave the press prior notice of their intentions to raid Mr. Barnes's home, and the press was traveling with Defendants when the raid occurred. The press took a picture of Mr. Barnes being dragged away from his home. That photograph was subsequently published on the front page of *The Gadsden Times*, causing Mr. Barnes to endure public humiliation.

### B.   Rule 12(b)(6) Motion

### <u>Count One–Illegal Seizure</u>

In Count One of his complaint, which is brought against all defendants, Mr. Barnes contends that:

> By seizing Plaintiff's person without probable cause and without a warrant, all five Defendants violated Plaintiff's right to be free from unreasonable seizures in violation of the rights guaranteed by the 4th Amendment and incorporated against the states by the 14th Amendment.

(Doc. 27 ¶ 41).

Attached to Mr. Waldrop's Rule 12(b)(6) Motion is a certified copy of a criminal complaint against and an arrest warrant for Stephen Roy Blackburn (the

14

"Blackburn Warrant") issued on August 14, 2012. (Doc. 29-1 at 4, 2).[5] Mr. Waldrop requests that this court consider his defense of qualified immunity to Count One by factoring in the Blackburn Warrant without converting his motion to one for summary judgment. (*See* Doc. 29 at 8-9 ("This Defendant's position is that the Second Amended Complaint implies of the warrant's existence and that it can be considered by this Court.")).

Mr. Barnes contests Mr. Waldrop's position and insists that Rule 12(d) precludes the court from relying upon the Blackburn Warrant as part of its Rule 12(b)(6) analysis because the document presents a matter arising outside of the pleadings. Rule 12(d) provides:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d).

As the Eleventh Circuit has explained the framework for determining when a court may consider a document unattached to a complaint as part of a defensive motion to dismiss:

> Ordinarily, we do not consider anything beyond the face of the

---

[5]  All page references to Doc. 29-1 correspond with the court's CM/ECF numbering system.

complaint and documents attached thereto when analyzing a motion to dismiss. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368 (11th Cir. 1997). This court recognizes an exception, however, in cases in which <u>a plaintiff refers to a document in its complaint</u>, the document is central to its claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss. *Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999); *Brooks*, 116 F.3d at 1368–69. Here, FSA refers to the existence of the insurance policy and relies on the effect of the policy—that FSA is thereby required to make payments to the bondholders—though it does not quote from the policy or discuss its specific provisions.

*Financial Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007); *see also Quail Cruises Ship Management Ltd. v. Agencia de Viagens CVC Tur Limitada*, 645 F.3d 1307, 1310 n.5 (11th Cir. 2011) (referencing similar requirements for exception to apply).

Here, the record is clear that Mr. Barnes's complaint does not expressly refer to the Blackburn Warrant. *See* Doc. 29 at 8 ("Plaintiff, again, has failed to plead a fact that is clearly known by him–that the Defendants were attempting to arrest Stephen Blackburn pursuant to an arrest warrant issued by a magistrate.")). Instead, Mr. Waldrop maintains that the document's existence is implied from the contents of the complaint.

However, in suggesting that an actual reference to the document by the plaintiff is unnecessary for the exception to apply, Mr. Waldrop offers no on-point case authority in which the Eleventh Circuit has expanded the scope of its exception in

such a significant manner. Under such circumstances, Mr. Waldrop's position is underdeveloped. *Cf. Flanigan's Enters., Inc. v. Fulton County, Ga.*, 242 F.3d 976, 987 n.16 (11th Cir. 2001) (holding that a party waives an argument if the party "fail[s] to elaborate or provide any citation of authority in support" of the argument); *Ordower v. Feldman*, 826 F.2d 1569, 1576 (7th Cir. 1987) (stating that an argument made without citation to authority is insufficient to raise an issue before the court).

Moreover, in the absence of any reference to the Blackburn Warrant in the complaint, the court finds that Mr. Waldrop cannot satisfy another requirement–that the Blackburn Warrant is central to Mr. Barnes's <u>claims</u>. In particular, while the existence of the Blackburn Warrant may be essential to Mr. Waldrop's <u>affirmative</u> <u>defense</u> of qualified immunity, Mr. Waldrop has not offered any authority to substantiate that this makes the document also central to Mr. Barnes's claims, especially when the document is not even mentioned in his pleading.

Additionally, based upon Mr. Waldrop's opposition to the Rule 12(b)(6) Motion, there appear to be some potentially material factual questions about the validity of the Blackburn Warrant, which contested issues the court finds are more appropriately examined under the lense of a more developed summary judgment record. Therefore, in light of all these reasons, the court will not consider the Blackburn Warrant under the Eleventh Circuit's Rule 12(b)(6) conversion exception.

Further, because the Blackburn Warrant is pivotal to Mr. Waldrop's qualified immunity defense contentions applicable to Mr. Barnes's illegal seizure claim, the Rule 12(b)(6) Motion is **DENIED** as to Count One.

### Count Three–Illegal Search

Count Three of Mr. Barnes's complaint contains allegations against Mr. Waldrop, Mr. Cole Lumpkin, and Mr. Thompson. More specifically, Mr. Barnes asserts that:

> By searching Plaintiff's home without a warrant and without probable cause, Defendants Waldrop, Cole Lumpkin, and Thompson, violated Plaintiff's right to be free from unreasonable searches, as guaranteed by the 4th Amendment and incorporated against the states via the 14th Amendment.

(Doc. 27 ¶ 43). Comparable to the court's analysis of Count One above, because the Blackburn Warrant is pivotal to Mr. Waldrop's qualified immunity defense contentions applicable to Mr. Barnes's illegal search claim, the Rule 12(b)(6) Motion is **DENIED** as to Count Three.

### Count Four–Excessive Force

In addition to his unlawful seizure and search claims, Mr. Barnes attempts to assert a discrete claim for excessive force against Mr. Waldrop and Mr. Thompson. (*See* Doc. 27 ¶ 44 ("By dragging Plaintiff from his home and threatening to kill him, Defendants Waldrop and Thompson violated Plaintiff's right to be free from

18

excessive force as guaranteed by the 4th Amendment and incorporated against the states via the 14th Amendment.")). As the Eleventh Circuit has clarified the appropriate scope of excessive force as a federal constitutional violation:

> "Under this Circuit's law ... <u>a claim that any force in an illegal stop or arrest is excessive is subsumed in the illegal stop or arrest claim and is not a discrete excessive force claim.</u>" *Jackson v. Sauls*, 206 F.3d 1156, 1171 (11th Cir. 2000) (citing *Williamson v. Mills*, 65 F.3d 155, 158–59 (11th Cir. 1995)). The right to make an arrest "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 1871–72, 104 L. Ed. 2d 443 (1989). It follows, then, <u>if an arresting officer does not have the right to make an arrest, he does not have the right to use any degree of force in making that arrest</u>. This is the premise of Bashir's "excessive force" claim; but this is not what is meant by "excessive force." An excessive force claim evokes the Fourth Amendment's protection against the use of an unreasonable quantum of force (*i.e.*, non-de minimis force unreasonably disproportionate to the need) in effecting an otherwise lawful arrest. <u>When properly stated, an excessive force claim presents a discrete constitutional violation relating to the manner in which an arrest was carried out, and is independent of whether law enforcement had the power to arrest. A claim like Bashir's—that the deputies used excessive force in the arrest because they lacked the right to make the arrest—is not a discrete constitutional violation; it is dependent upon and inseparable from his unlawful arrest claim.</u> *Jackson*, 206 F.3d at 1171. We reiterate, where an excessive force claim is predicated solely on allegations the arresting officer lacked the power to make an arrest, the excessive force claim is entirely derivative of, and is subsumed within, the unlawful arrest claim. *Id.*; *Williamson*, 65 F.3d at 158–59. <u>Bashir does not present a discrete excessive force claim and, therefore, his excessive force claim fails as a matter of law</u>.

*Bashir v. Rockdale County*, 445 F.3d 1323, 1331-32 (11th Cir. 2006) (emphasis added).

19

Turning to Mr. Barnes's complaint, he consistently disputes the legality of Mr. Waldrop's seizing of his person and nowhere in his pleading does he concede that Mr. Waldrop acted in a lawful manner in his treatment of him at any time. In doing so, Mr. Barnes's excessive force allegations are necessarily directly linked (and derivative of) his unlawful seizure claim which is akin to an unlawful arrest claim. *See Terry v. Ohio*, 392 U.S. 1, 16, 88 S. Ct. 1868, 1877, 20 L. Ed. 2d 889 (1968) ("It is quite plain that the Fourth Amendment governs 'seizures' of the person which do not eventuate in a trip to the station house and prosecution for crime–'arrests' in traditional terminology.").

Therefore, under the Eleventh Circuit's holding in *Bashir*, and given the contours of Mr. Barnes's pleading, Mr. Barnes's excessive force allegations are subsumed by his federal cause of action for unlawful seizure and are not independently viable. Accordingly, Mr. Waldrop's Rule 12(b)(6) Motion is **GRANTED** as to Count Four.

### Count Five–Second Amendment

Mr. Barnes final count is asserted against Mr. Waldrop only:

> By telling Plaintiff that Plaintiff had no right to answer his own door with a firearm, and threatening to kill Plaintiff for doing so again, Defendant Waldrop violated Plaintiff's right to keep and bear arms, as guaranteed by the 2d Amendment and incorporated against the states via the 14th Amendment.

(Doc. 27 ¶ 45). In his Rule 12(b)(6) Motion, Mr. Waldrop maintains that Mr. Barnes is attempting to "manufactur[er] a Second Amendment issue when none exists." (Doc. 29 at 24). The court agrees.

More specifically, in his opposition to the Rule 12(b)(6) Motion, Mr. Barnes makes no effort to demonstrate by citing to on-point authority how the above allegations, taken as true, plausibly violate Mr. Barnes's Second Amendment constitutional rights. Alternatively, even if such verbal statements made by Mr. Waldrop do constitute unconstitutional conduct under the Second Amendment, Mr. Barnes has not met his burden of defeating Mr. Waldrop's qualified immunity defense to this claim by showing that Mr. Waldrop's words violated either (i) clearly established legal authority or (ii) the less commonly present apparent unlawfulness exception. Accordingly, Mr. Waldrop's Rule 12(b)(6) Motion is **GRANTED** as to Count Five.

In the second section of his Rule 12(b)(6) Motion, Mr. Waldrop seeks a dismissal of Mr. Barnes's claims for declaratory and injunctive relief. (Doc. 29 at 22-25). This portion of Mr. Waldrop's Rule 12(b)(6) Motion is **GRANTED**.

In particular, Mr. Barnes has indicated that he has sued all defendants in their individual capacities only. (*See* Doc. 27 ¶ ("He is sued in his individual capacity."); id. ¶¶ 7-10 (same)). "When a plaintiff sues a municipal officer in the officer's

individual capacity for alleged civil rights violations, the plaintiff seeks <u>money damages</u> directly from the individual officer." *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991) (emphasis added) (citing *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S. Ct. 3099, 3105, 87 L. Ed. 2d 114 (1985)).

Accordingly, Mr. Barnes's unambiguous capacity-related allegations render his requests for declaratory and injunctive relief implausible because such must be brought against state actors in the <u>official</u> capacities. *Cf. Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690, 98 S. Ct. 2018, 2035-36, 56 L. Ed. 2d 611 (1978) ("Local governing bodies, therefore, can be sued directly under § 1983 for monetary, <u>declaratory, or injunctive relief</u> where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.") (footnote omitted) (emphasis added); *id.* at 691 n.55, 98 S. Ct. at 2036 n.55 ("Since official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent—at least where Eleventh Amendment considerations do not control analysis—our holding today that local governments can be sued under § 1983 necessarily decides that local government officials sued in their official capacities are "persons" under § 1983 in those cases in which, as here, a local government would be suable in its own name.").

### C.    Rule 12(c) Motion

The Rule 12(c) Motion filed collectively by the other four named defendants similarly seeks a dismissal of Counts One, Three, and Four on the basis of qualified immunity and "adopts the brief of codefendant Waldrop to the extent pertinent[; and] [p]articularly [relies upon] the submission of Exhibit A [*i.e.*, the Blackburn Warrant] to codefendant's brief and the arguments supporting its submission and the court's review thereof." (Doc. 35 at 2).[6] Consistent with the court's conclusions reached on Mr. Waldrop's Rule 12(b)(6) Motion, the Rule 12(c) Motion is **GRANTED** as to Count Four, but is otherwise **DENIED**.

### IV.    CONCLUSION

Therefore, for the reasons stated above, the Rule 12(b)(6) Motion and Rule 12(c) Motion are **GRANTED IN PART** and otherwise are **DENIED**. Specifically, Counts Four and Five and all claims for declaratory and injunctive relief are **DISMISSED with prejudice**; all other Counts and claims remain.

**DONE** and **ORDERED** this 29th day of May, 2014.

_VEHopkins_

**VIRGINIA EMERSON HOPKINS**
United States District Judge

---

[6]  All page references to Doc. 35 correspond with the court's CM/ECF numbering system.

23